[Civ. No. 24685.   First Dist., Div. Four.   Dec. 2, 1968.]

BILLIE DIXON et al., Plaintiffs and Respondents, v. THE MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Phelan, Deputy Attorneys General, for Defendant and Appellant.

Marshall W. Krause, Paul N. Halvonik and Charles C. Marson for Plaintiffs and Respondents.

DEVINE, P. J.—The municipal court appeals from a writ of prohibition by which the superior court has forbidden the prosecution of respondents Dixon and Bright for alleged violation of section 647, subdivision (a) of the Penal Code. It had been charged in a complaint filed in the municipal court that respondents herein "did engage in lewd and dissolute conduct in a public place and a place open to the public."

The asserted lewd act was a simulation between a male and a female performer of an act of oral copulation. This was

done in the course of a performance of a one-act play called "The Beard."

A recent decision of the Supreme Court, *In re Giannini,* 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], answers several questions which have been put before us. In that case, the petitioners were a topless dancer and the manager of the night club where she performed. They sought a writ of habeas corpus. The writ was granted on the ground that the prosecution was required to introduce expert testimony establishing contemporary community standards and that the "community" is the whole State of California. But the petitioners, who had been charged with violation of the same section as are respondents herein, section 647, subdivision (a) (as well, in the *Giannini* case, with violation of section 314 of the Penal Code, indecent exposure and procuring such exposure), were not discharged. They were remanded to the municipal court "for further proceedings, if any."

It is argued that section 647, subdivision (a) is unconstitutional because of vagueness. This argument was made in the *Giannini* case. It was held that section 647, subdivision (a) as applied to a species of entertainment before an audience is not unconstitutional for vagueness. The words "lewd and dissolute" of section 647, subdivision (a) refer to that which is obscene, at least as the words are related to a theatrical performance.

"Obscene" is defined in section 311, subdivision (a) of the Penal Code as "that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance." Although the definition of "obscene" in section 311 refers to "matter," and "matter" as defined in subdivision (b) of that section refers to fixed representations (including motion pictures) rather than to live portrayals on a stage, the definition is also applicable to live entertainment, as held in the *Giannini* case.

It is argued that section 647, subdivision (a) does not apply to a performance within a theater which patrons must pay to enter, because this is not a "place open to the public." In the *Giannini* case, the court noted that the dance was performed within a night club; that minors were excluded; that the performance could not be seen from outside. Still, section

647, subdivision (a) could apply, if the tests for obscenity were met.

It is contended by respondents that section 647, subdivision (a) cannot have been intended by the Legislature to cover performances wherein the participants exhibit or communicate ideas or impressions to an audience, because offenders against section 647, subdivision (a) are required to register as sex offenders under section 290 of the Penal Code. This section commands such registration of persons convicted of various sexual offenses such as rape, sodomy, incest, oral copulation, and lewd acts upon children. Respondents contend that the legislative intent was to cause registration of persons guilty of actual sexual misconduct, and not of those who perform theatrically. Thus, section 647, subdivision (a) would apply only to persons who actually commit lewd acts in public places; to dissolute persons who are dangerous or offensive to the public.

But although this point was not discussed in the *Giannini* case, the action of the court in remanding the petitioners for possible retrial is a recognition of the applicability of section 647, subdivision (a) to theatrical performers (the dance therein was described as a ''theatrical dance''). We do not need to decide whether the applicability of section 290 could be challenged successfully by a performer if he were convicted of violation of section 647, subdivision (a). Section 647, subdivision (a) has a sanction of its own. As a misdemeanor for which specific punishment is not prescribed, it is punishable under Penal Code section 19.

It cannot be reasonably believed that the Legislature intended to allow any and all acts which are patently obscene to be committed on stages, runways or other performing areas—but this would be the effect (except as to acts specifically made criminal under other statutes; for example, sodomy) of holding section 647, subdivision (a) inapplicable. It is more logical to withhold judgment on whether section 290 could apply to a theatrical performer than to hold all persons immune from obscene performances because registration may not be apposite to their cases.

Respondents contend that a performance must be judged as a whole under First Amendment standards. We agree. The *Giannini* case so holds. The allegedly lewd act is not to be presented to the trier or triers of fact as an isolated episode, but only in context. The First Amendment does not protect obscenity. (*Roth* v. *United States,* 354 U.S.

476, 485 [1 L.Ed.2d 1498, 1507, 77 S.Ct. 1304]; *Landau* v. *Fording*, 245 Cal.App.2d 820, 823 [54 Cal.Rptr. 177].) It does guarantee that certain standards shall be met if obscenity is to be found. These standards are met when the dominant theme of the material taken as a whole appeals to a prurient interest in sex, the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters, and the material is utterly without redeeming social value. (*Memoirs* v. *Massachusetts*, 383 U.S. 413, 418-491 [16 L.Ed.2d 1, 5-6, 86 St.Ct. 975]; *In re Giannini, supra*, 69 Cal.2d at pp. 573-574.)

■ Apparently there is no statute which expressly proscribes a play which is obscene. Section 311, as said above, applies to pictorial representations and the like; section 311.6 of the Penal Code forbids the singing or speaking of any obscene song, ballad or other words in any public place. Theatrical representations as such are not directly mentioned in any state statute. But this does not mean that a charge cannot be laid against respondents for the performance of a lewd act. Within the context of a play, a ballet, a dance or another performance, there may be done an act which, even when it is placed in the dialogue, choreography or surroundings of the whole work, and with all First Amendment protection thrown about it, nevertheless is a lewd act.

In the case before us, we do not have testimony of what was actually done, because prosecution was barred by the writ. But if the script was followed during the performance, it would seem that the viewer would hardly be able to tell whether the act were really being done on the stage or simulated. As we have said above, in a somewhat different context, it would be hard to believe that the Legislature intended that obscene acts of almost any kind are to be outside the law merely because they are incorporated into some kind of dramatic presentation. If it were so, the rankest of acts could be exhibited by writing some lines, somewhat relevant, around the acts. In the *Giannini* case, section 647, subdivision (a) was not held inapplicable although the presentation was a "live" one and probably not subject to the terms of section 311. In the opinion, the dance is referred to as a "theatrical performance," as is the one-act play before us.

There are several sexual acts which, although not criminal in themselves, as is oral copulation, doubtless would be deemed by many a trier of fact applying First Amendment

standards to be obscene even when contained in a play or a dance or other performance with full First Amendment protection. It is entirely possible that the simulation of such acts, and of the act in ''The Beard,'' would itself be an obscene act. The positions and motions of the performers, the duration of the act, the accompanying dialogue and all of the circumstances, taken together with the content of the entire work, may establish an imitation of an actual deed to be obscene.

The order granting the writ of prohibition is reversed. If and when the case is tried in the municipal court, the trier of fact will determine, if the act charged be proved, whether the act taken in context with the whole performance, and judged by standards of the State of California as a whole, upon consideration of expert testimony, is obscene.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied December 23, 1968, and respondents' petition for a hearing by the Supreme Court was denied January 29, 1969. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.