Filed 2/19/25  P. v. Jimenez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOCELYN JIMENEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B332964<br>(Super. Ct. No. PA099312)<br>(Los Angeles County) |

Jocelyn Jimenez appeals from the judgment after pleading no contest to possession of a firearm by a felon (Pen. Code[1], § 29800, subd. (a)(1); count 1), unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2), and carrying a loaded, unregistered handgun (§ 25850, subds. (a), (c)(6); count 3).  The trial court granted appellant two years of probation with terms, including credit for time served.

---

[1] Undesignated statutory references are to the Penal Code.

Appellant contends the court erred by failing to find she was subjected to an unlawful detention and pat-down search in violation of the Fourth Amendment. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2022, Los Angeles Police Department Officer Felix Rodriguez, who was with his partner, saw appellant standing directly behind a car in a parking lot. During Officer Rodriguez's investigation, appellant stated the car belonged to her uncle. Alejandro Cazares was in the car's front passenger seat. Officer Rodriguez had arrested Cazares twice in the past. Cazares was on postrelease community supervision (PRCS) with search conditions. He was also a member of the Violent Boys gang.

At the May 2023 preliminary hearing, Officer Rodriguez testified he had been assigned to monitor Violent Boys gang members for the past three and a half years. He had been a sworn peace officer for approximately seven and a half years. According to Officer Rodriguez, Violent Boys gang members are known to carry firearms. One year prior to the incident with appellant, Officer Rodriguez had arrested Violent Boys gang members at that specific location, including an arrest for firearm possession on that property. Officer Rodriguez also testified that "[g]ang members utilize tactics where they either hand [a firearm] to a female associate of theirs or also a member to avoid police confiscation."

After seeing appellant standing behind the car, Officer Rodriguez asked her to wait against a fence. He told appellant not to reach into her pocket and asked if she had been arrested before. Appellant said she had been arrested for drugs. Officer

2

Rodriguez told appellant she was being detained. Appellant indicated she had no weapons.

Officer Rodriguez conducted a pat-down search of appellant for officer safety reasons. Appellant was wearing oversized, baggy clothing. At one point, Officer Rodriguez slightly lifted appellant's shirt to check her waistband. He observed a dark object concealed in appellant's front waistband. Appellant advised it was a gun. Officer Rodriguez handcuffed appellant and recovered a nine-millimeter compact firearm from her front waistband. The gun had an inserted magazine with six live rounds of ammunition, but there was no round in the chamber.

At the end of the preliminary hearing, the magistrate denied appellant's section 1538.5 motion to suppress. The magistrate cited several factors, including appellant being directly behind the car containing Cazares, appellant's indication the car belonged to her uncle, body-worn video that was played, and Officer Rodriguez's "particular knowledge of the practices of members of this particular street gang with regard to secreting of firearms on female companions or associates . . . ." Appellant subsequently moved for a special hearing under section 1538.5, subdivision (i). The court denied that motion, as well as a renewed motion under that subdivision.

DISCUSSION

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. (*Terry v. Ohio* (1968) 392 U.S. 1, 8-9 [20 L.Ed.2d 889] (*Terry*).) But the Fourth Amendment "permits an officer to initiate a brief investigative . . . stop when [the officer] has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' [Citations.] 'Although a mere "hunch" does not create

3

reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" (*Kansas v. Glover* (2020) 589 U.S. 376, 380 [206 L.Ed.2d 412]; *People v. Flores* (2024) 15 Cal.5th 1032, 1041 (*Flores*).)

Furthermore, an officer may conduct a reasonable search for weapons when the officer has reason to believe a suspect is armed and dangerous, regardless of whether probable cause to arrest exists. (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [their] safety or that of others was in danger." (*Terry*, *supra*, 392 U.S. at p. 27.) An inchoate, unparticularized suspicion or hunch is insufficient. (*In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 305.) Instead, a *Terry* search is justified only if "the officer can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous." (*People v. Medina* (2003) 110 Cal.App.4th 171, 176.)

"'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.'" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.) "In doing so we do not consider each fact in isolation. Instead, 'we must consider "the totality of the circumstances — the whole picture."'" (*Flores*, *supra*, 15 Cal.5th at p. 1043.)

Reasonable suspicion supported the *Terry* detention and search of appellant. Alejandro Cazares, a Violent Boys gang member, was sitting in the front passenger seat of the car behind which appellant stood. Officer Rodriguez had twice arrested Cazares, who was on PRCS with search conditions. Moreover, Officer Rodriguez had been assigned to monitor Violent Boys gang members for years. Violent Boys gang members are known to carry firearms. One year prior, Officer Rodriguez had even arrested a Violent Boys gang member for firearm possession in the same location. These circumstances created reasonable suspicion Cazares illegally possessed a firearm. (See *Flores*, *supra*, 15 Cal.5th at p. 1046 [a trained police officer could draw inferences "'that might well elude an untrained person'"].)

Specific, articulable facts connected Cazares and appellant. Appellant's proximity to a car containing Cazares implied association. Given that the driver's seat was empty, it was reasonable to infer appellant may have been driving the car. Critically, Officer Rodriguez testified that gang members will hand a firearm to a female associate to avoid police confiscation. Thus, reasonable suspicion supported detention of appellant to ascertain whether Cazares, in conformity with this tactic, had passed her a firearm. These same facts gave rise to reasonable suspicion appellant was armed and dangerous. Appellant was also wearing baggy, oversized clothes capable of concealing a firearm, further necessitating a *Terry* search to ensure officer safety. (*In re Jeremiah S.*, *supra*, 41 Cal.App.5th at p. 305 [baggy clothing that suggests a hidden weapon is a relevant consideration].) No Fourth Amendment violation occurred.

*Flores* does not suggest otherwise. Flores repeatedly ducked behind a car, apparently pretended to tie his shoe, and

5

failed to acknowledge officers who approached him—all ostensibly to avoid police interaction. (*Flores*, *supra*, 15 Cal.5th at pp. 1045, 1047.) Flores was in an area known for narcotics and gang activity, and the testifying officer "had arrested someone in the vicinity the night before for narcotics crimes." (*Id*. at p. 1038.) The totality of the circumstances, including Flores's "noteworthy" behavior, did not provide reasonable suspicion he was engaged in illegal activity. (*Id*. at p. 1047.)

Here, the proper focus is not appellant's physical behavior but the surrounding circumstances. Those circumstances supported an inference that appellant was associating with Cazares, a known Violent Boys gang member. Officer Rodriguez's specific knowledge of that gang's practices, and of Cazares in particular, helped furnish reasonable suspicion. The officers in *Flores* lacked this degree of particularized knowledge.

Relying on *People v. Pantoja* (2022) 77 Cal.App.5th 483, appellant argues the year-old information regarding Officer Rodriguez's arrest of Violent Boys members at the same location "simply does not satisfy the specific, articulable facts required for reasonable suspicion to detain and search a defendant for weapons under the current state of the law." We do not read *Pantoja* to forbid consideration of information that is one year old. Although information's value diminishes over time, one year is not an inordinately long period. (Cf. *People v. Bush* (2001) 88 Cal.App.4th 1048, 1053 [relying on six-year-old information about a defendant to uphold denial of a suppression motion].)

Moreover, we do not evaluate that piece of information in isolation. (*Flores*, *supra*, 15 Cal.5th at p. 1032.) We instead assess the totality of the circumstances. The year-old arrests, including for firearm possession, would likely be insufficient

alone.  But, when considered alongside the other circumstances, we conclude reasonable suspicion existed.  "To say otherwise would be tantamount to undermining all the specialized knowledge about gang operations gathered by investigators who are deeply immersed in tracking such activity and would impermissibly shrink *Terry* . . . analysis to an artificially confined scope."  (*People v. Esparza* (2023) 95 Cal.App.5th 1084, 1092; see also *United States v. Cortez* (1981) 449 U.S. 411, 418 [66 L.Ed.2d 621] [analysis properly encompasses "consideration of the modes or patterns of operation of certain kinds of lawbreakers"].)

DISPOSITION

The judgment is affirmed.


NOT TO BE PUBLISHED.




CODY, J.


We concur:



GILBERT, P. J.



BALTODANO, J.

Michael Terrell, Judge
Superior Court County of Los Angeles

_____

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott Taryle, Supervising Deputy Attorney General, and Lauren Sanchez, Deputy Attorney General, for Plaintiff and Respondent.